UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN W. CASSADAY,

                Plaintiff,

v.

STATE OF MICHIGAN et. al.,
                Defendants.
_____/

Case No. 1:25-cv-12576

Honorable Thomas L. Ludington
United States District Judge

Honorable Patricia T. Morris
United States Magistrate Judge

**OPINION AND ORDER (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; (2) OVERRULING PLAINTIFF'S OBJECTIONS; (3) DISMISSING PLAINTIFF'S COMPLAINT; (4) AND DENYING PLAINTIFF'S EX PARTE MOTION FOR LEAVE OF COURT FOR SERVICE BY THE U.S. MARSHALS, (5) PLAINTIFF'S MOTION FOR LEAVE OF COURT AND NOTICE TO THE COURT OF DEFENDANT CONTACT, (6) PLAINTIFF'S EX PARTE EMERGENCY MOTION FOR LEAVE TO AMEND TO ADD ADDITIONAL DEFENDANTS, (7) PLAINTIFF'S EX PARTE MOTION FOR LEAVE OF COURT TO APPOINT A SPECIAL MASTER, (8) PLAINTIFF'S EX PARTE MOTION FOR LEAVE OF COURT TO PROVIDE NOTICE OF CONTINUED HARASSMENT, (9) PLAINTIFF'S EX PARTE MOTION FOR LEAVE OF COURT TO AMEND JURISDICTION, (10) PLAINTIFF'S EX PARTE MOTION FOR LEAVE OF COURT FOR RECONSIDERATION, (11) PLAINTIFF'S MOTION FOR LEAVE TO AMEND, (12) PLAINTIFF'S MOTION TO TRANSFER, AND (13) PLAINTIFF'S MOTION FOR LEAVE TO FILE A CORRECTED COMPLAINT IN SUPPORT OF TRANSFER AS MOOT.**

On August 18, 2025, Plaintiff Kevin Cassaday filed an over ninety-page, *pro se* Complaint. Plaintiff seemingly alleges several cases in one, including facts related to (1) workers disability and compensation, (2) interactions with the Michigan State Police, (3) alleged insufficiency within the healthcare system, (4) perceived threats from attorneys at two separate law firms, (5) the Michigan Bureau of Professional Licensing, (6) the Eaton County Sherriff's Office, (7) the Michigan State Courts, (8) "Various" other matter, including some related to Taco Bell, Verizon, and Amazon orders, (9) Michigan cannabis regulations, (10) the former Director of Michigan's

Licensing and Regulatory Affairs (LARA), (11) his divorce, and (12) his interactions with Blue Cross Blue Shield (BCBS).

Within his Complaint he states thirteen different causes of action against over thirty Defendants, however, it is not clear from the Complaint which claims are alleged against which Defendants.

On October 17, 2025, the Court granted Plaintiff's application to proceed *in forma pauperis* (IFP) and referred the case to Magistrate Judge Morris. Because Plaintiff proceeds IFP, Judge Morris screened Plaintiff's Amended Complaint under 28 U.S.C. § 1915(e)(2)(B). In so doing, Judge Morris issued a report (R&R) recommending that this Court dismiss Plaintiff's Complaint. For the reasons explained below, Plaintiff's Objections will be overruled, Judge Morris's R&R will be adopted, Plaintiff's Complaint will be dismissed with prejudice, all pending Motions including (1) Plaintiff's *ex parte* Motion for Leave of court for Service by the U.S. Marshals, (2) Motion for Leave of Court and Notice to the Courts of Defendants Contact, (3) Plaintiff's *ex parte* Emergency Motion for Leave of Court to Amend Additional Defendants, (4) Plaintiff's ex parte motion for Leave of Court to Appoint a Special Master, (5) Plaintiff's *ex parte* Motion for Leave of Court, Notice to the Court of Continued Harassment by Defendant, (6) Plaintiff's *ex parte* Emergency Motion for Leave of Court, Notice to the Court of Continued Harassment by Defendant[1], (7) Plaintiff's *ex parte* Motion for Leave of Court to Amend Jurisdiction Plaintiff Accepts Magistrate, (8) Plaintiff's *ex parte* Motion for Leave of Court, Motion for Reconsideration, (9) Plaintiff's Motion for Leave to Amend/Correct Cause of Action, (10) Plaintiff's Motion to Transfer, and (11) Plaintiff's Motion to File Corrected Complaint in Support of Transfer will all be denied as moot.

---

[1] This Motion and the preceding Motion are two separate filings. *See* ECF Nos. 9, 10.

## I.

### A.

Magistrate Judge Morris summarized the facts of the case as succinctly as possible:

Plaintiff's troubles date back to October 2010, when he applied to work for Defendant Dow Chemical Company. He started a position as an hourly logistics packager a few months later. On November 14, 2011, Plaintiff was promoted to a role that required him "to work on equipment that was broken, having to manually assist in lifting shaker tables that weighed 100+ pounds, maybe upwards of 160 pounds per table." Plaintiff says that "having to assist in lifting these tables more than 300 times per shift was abusive, [and] a failure of the company to provide a safe working place."

During this period, Plaintiff began experiencing "physical troubles," which he reported to his supervisor. "Shortly thereafter, [Plaintiff] was promoted to a more laborious job . . . ." One day, Plaintiff bent over to pick something up from a pallet and "felt a pop in his low back, he didn't think much of it, [but] as the morning went on he started to have troubles[.]" Plaintiff tried to push through his injury but eventually was unable to continue working and notified his supervisor.

On February 18, 2013—after completing over thirty sessions of physical therapy—Plaintiff underwent a functional capacity examination. The recommendation from that examination was that Plaintiff only perform work falling within "the [l]ight range." The next month, Plaintiff was terminated from his job. Plaintiff contacted his union (the United Steelworker, Local 12075) for assistance and the agent he spoke to indicated that the union had been told Plaintiff quit his job.

Following his termination, Plaintiff filed a charge of discrimination against Dow Chemical with the Michigan Occupational Safety and Health Administration (MIOSHA) and this charge was also transmitted to the Equal Employment Opportunity Commission (EEOC). Plaintiff obtained counsel to pursue a workers' compensation claim against Dow.

Soon after, Plaintiff began noticing odd things such as unfamiliar vehicles parked outside his home and following him. On one occasion, someone rear-ended Plaintiff's wife's vehicle while she was stopped at a red light. Plaintiff was a passenger in the car and got out to inspect for damage and talk to the other driver. The "driver tried to sound foreign of nature" and the incident "sticks in [Plaintiff's] mind as he believes these individuals were hired by the attorney that was hired by Dow Chemical."

Plaintiff later discovered that Dow Chemical's attorney and the attorney presiding over his worker's compensation claim were members of the same law firm—Defendant KVG Law. Plaintiff informed his attorney of this conflict and the worker's compensation claim was reassigned to a new presider and Dow obtained

different counsel. The new presider ruled against Plaintiff, which Plaintiff says happened "shortly after [he] called the authorities on the investigators harassing [and] intimidating him." Plaintiff later discovered that the new presider had previously been employed by Dow Chemical and "most likely had stocks in the company [and] would defend [it] to no end as it would affect his stock prices." Plaintiff appealed his worker's compensation claim up to the Michigan Court of Appeals.

In the aftermath of his employment with Dow Chemical, Plaintiff alleges that he "endured other events that he" tried "to delineate" in his complaint "the best he can as the abuse continued for years on end." Plaintiff categorizes these events into the following "matters":

**Matter 2 – Michigan State Police (MSP):** Plaintiff alleges that on May 14, 2024, he reported an individual who had been investigating him due to his worker's compensation claim for "harassment, intimidation, [and] retaliation." An MSP Trooper informed Plaintiff that he spoke to the individual and determined that he was a " 'licensed private investigator,' " which Plaintiff says is untrue.  Plaintiff also says that the Trooper failed to file a report as required.

**Matter 3 – Healthcare:** Plaintiff alleges that he received poor medical care following his work injury from providers at Defendants Rehab Associates of MidMichigan, Adams Neurosurgery, Henry Ford Allegiance Health, Michigan State University Health, Lansing Neurosurgery, Sparrow Health System – Lansing Radiology, Great Lakes Center of Rheumatology, Lansing Institute of Urology, and University of Michigan Health.

He further alleges that he sought psychological care because his mental health had been negatively affected by the events described herein. His insurance company, BCBS, appears to have provided him with a list of covered providers but none of the providers would take Plaintiff as a patient, giving excuses such as not treating adult patients. Plaintiff's local Community Mental Health Services Program denied him care, claiming that Plaintiff did not "meet the threshold."

Eventually, Plaintiff's then wife, a State of Michigan employee, suggested that Plaintiff call the hotline for State employees and their families for help getting psychological care. A hotline worker helped Plaintiff get scheduled for an intake and treatment at Meridian Professional Psychology. At first, Plaintiff liked his providers, "but after he shared information in regards to the Dow Chemical claims he raised, the environments changed." Plaintiff appears to believe that the office manager was retaliating against him on behalf of Dow Chemical.

After a March 4, 2019 appointment, Plaintiff got into an altercation while driving with Defendant Bradly Hoopingarner. The altercation ended when Hoopingarner "brake checked" Plaintiff, causing Plaintiff to accidently rear end Hoopingarner's vehicle. Plaintiff received a basic speeding ticket for this incident; Hoopingarner's vehicle was towed away and the responding officer allowed Hoopingarner to walk

home after performing a field sobriety test. Plaintiff went before an Ingham Court judge to challenge the ticket, and the judge told him "something along the lines of, 'if I had to guess, I would say this was staged.' " Plaintiff tried to research Hoopingarner's background but was only able to determine that Hoopingarner may have been employed by Michigan State University and had recently encountered legal problems.

**Matter 4 – Grewal Law:** Plaintiff alleges that he reached out to Defendant Grewal Law and spoke to an attorney about "the matters he encountered at Sparrow Health, some of the events overlap [and] are intertwined to which he had to describe the events." When Plaintiff mentioned two of the medical

**Matter 5 – Michigan Bureau of Professional Licensing (BPL):** Plaintiff alleges that "though this time [he] filed complaints with [BPL] in regard to the adverse conduct [and] environments he had experienced." Defendant BPL seemingly ignored Plaintiff's complaints and Plaintiff notes that "[t]his is the exact system that Larry Nassar exploited here in [Michigan] to abuse [and] sexually assault little girls for years on end."

**Matter 6 – Michigan Bar Association:** Plaintiff's allegations against the Michigan Bar Association are difficult to discern, but it appears he blames the Michigan Bar Association for his inability to obtain help from an attorney during the events described above.

**Matter 7 – Eaton County Sheriffs:** Plaintiff alleges that the Eaton County Sheriffs and Prosecutors Offices did not provide him with help when he reached out.

**Matter 8 – Michigan Courts:** Plaintiff alleges that Michigan courts, specifically Defendants Michigan Court of Claims, Michigan Court of Appeals, and Michigan Supreme Court, blocked his access to the courts in violation of the First Amendment when they prevented him from filing civil lawsuits by labeling him a vexatious litigator. He further alleges that his elected representatives, including Defendant Sarah Anthony and Senator Gary Peters, ignored his requests for help and that his complaints to the FBI about someone infiltrating the emails between himself and his mother were not properly investigated.

**Matter 9 – Various:** Plaintiff alleges that various seemingly frivolous incidents occurred including interference with his Taco Bell pickup orders, receiving items from Amazon that he did not purchase, problems with the mobile app he used to record phone calls relevant to this case, daily automated calls from AT&T even after he complained, retaliation from his phone carrier Verizon after he contacted them about his emails being changed, Merril Lynch eavesdropping on him through its mobile app, Fidelity closing his account while he was incarcerated without giving him the $800 in the account, a wireless phone charger turning on location services overnight to eavesdrop and siphon data, and times when unknown individuals came to his home.

**Matter 10 – Michigan Cannabis Regulatory Agency:** Plaintiff alleges that after recreational marijuana was legalized in Michigan, he purchased product that "was tainted [and] lacking in quality." He says that Defendant Michigan Department of Licensing and Regulatory Affairs (LARA) "created a form to blackmail anyone making purchases to waive their rights to seek remedy for being systematically poisoned." Plaintiff complained about this to Defendant Andrew Brisbo, then director of the Michigan Marijuana Regulatory Agency, and Defendant Joseph Thomas, formerly a state trooper affiliated with the Michigan Marijuana Regulatory Agency.

Plaintiff explains there was a conspiracy that led to medicinal marijuana products being of lesser quality than recreational marijuana products. In September and October 2021, Plaintiff attempted to report this conspiracy to law enforcement authorities but was ignored. Around the same time, Plaintiff began experiencing difficulties purchasing from dispensaries. Plaintiff again attempted to report these concerns to law enforcement but was ignored, intimated, and retaliated against.

**Matter 11 – Hawks / Luebs:** Plaintiff alleges that Defendant Orlene Hawks, former director of LARA, and her husband, Defendant Mike Hawks, worked together to weaponize governmental agencies and "squash competition in the marijuana market[.]" Plaintiff sent cease and desist letters to both husband and wife, which led to them sending Defendant William Luebs, a State Trooper, to Plaintiff's home. Plaintiff says the Hawks and Luebs were part of a conspiracy "to overthrow the [m]edical platform in [Michigan] due to the excise tax loss." Plaintiff further says that Defendant State of Michigan is committing violations of the Racketeer Influenced and Corrupt Organizations Act (RICO).

**Matter 12 – Michigan Notice of Intent Law:** Plaintiff alleges that the Michigan statute requiring individuals to file a notice of intent to sue before initiating a malpractice lawsuit is unconstitutional because it violates individuals' First Amendment right to access the courts.

**Matter 13 – Divorce / 56th Eaton Circuit Court:** Plaintiff alleges the state court handling his divorce "failed to drill down on the facts," thereby allowing his ex-wife to hide and retain assets and get away with perjury.

**Matter 14 – BCBS:** Plaintiff alleges that BCBS obstructed his access to healthcare and committed RICO violations by "bleeding money off the people['s] backs by denial of services."

ECF No. 16 at PageID.153–61 (citations omitted).

From these facts, Plaintiff asserts several causes of action including (1) 18 U.S.C. § 4 Misprision of Felony, (2) 18 U.S.C. § 241 Conspiracy Against Rights, (3) 18 U.S.C. § 242

Deprivation of Rights Under Color of Law, (4) 18 U.S.C. § 1512 Tampering with a Witness, Victim, or informant, (5) 18 U.S.C. § 1513 Retaliating Against a Witness, Victim, or Informant, (6) 18 U.S.C. § 1514(a) Civil Action to Restrain Harassment of a Victim or Witness (7) 18 U.S.C. § 2331(5) defining Domestic Terrorism, (8) seemingly Michigan's Model Criminal Jury Instructions, (9) MCL § 691.1407(2)(c)—Governmental Liability for Negligence, (10) MCL § 333.27963—Michigan Regulation and Taxation of Marihuana Act, (11) 42 U.S.C. § 1981 Equal Rights Under the Law, (12) 42 U.S.C. § 1983 Civil Action for deprivation of Rights, and (13) the Elliott Larson Civil Rights Act, however, it is not clear from the Complaint which claims are alleged against which Defendants.

These Defendants include (1) the state of Michigan; (2) Michigan Governor Gretchen Whitmer; (3) Michigan Attorney general Dana Nessel; (4) Director of the Michigan State Police James F. Grady; (5) MSP Trooper William Luebs; (6) MSP Trooper Smith[2]; (7) the Michigan Bureau of Professional Licensing; (8) the Director of the Michigan's Licensing and Regulatory Affairs agency Marlon Brown; (9) Mike Hawks of Governmental Consulting Services Incorporated; (10) the State Bar of Michigan; (11) Michigan State Senator Sarah Anthony; (12) Mark Wigglesworth, retired member of the Eaton County Sherriff's Office; (13) Scott Wigglesworth of the Ingham County Sherriff's Office; (14) Lansing City Police; (15) Sparrow Health System Lansing Radiology (Sparrow Health); (16) Sparrow Health's employees including Beinaz Menagi, Richard Allen, Laura S. White, Aimee M. Tagtmeier, and Uygar Teomete; (17) Michigan State University Health (MSU Health); (18) MSU Health's employees including Nathan Condie, Elizabeth Abdnour, Kaylie Starka, Matthew Saffarian, Bruce Wolf, and Bradley

---

[2] Trooper Smith's first name is not provided in the Complaint. *See generally* ECF No. 1.

Hoopingerner; (19) Covenant Health and Adam Neurosurgery (Covenant); (20) Covenant's employees including Mark Adams, Helen Decorte, Kolette Pacheco, and Diane Cehrcke; (21) Lansing Neurosurgery; (22) Lansing Institute of Neurology; (23) Great Lakes Center of Rheumatology (Great Lakes); (24) Great Lake's employees including Jashua June and Iyad Al-Shwaf; (25) Rehab Associates of Mid-Michigan and its employee John Szajenko; (26) the Dow Chemical Company; (27) KVG Law and its employee Robert Steelman; (28) Grewal Law and an Attorney Walsh[3]; (29) Henry Ford Allegiance Health (Henry ford); (30) Henry ford's employees including Frank Lamarca, Craig Brand, and Waseem Ullah; (31) seemingly his ex-wife Kelli Brozanski, (32) Michigan's Department of Education; Blue Cross Blue Shield, and (33) "Other unknown co-conspirators & parties."

**B.**

On October 17, 2025, the Court granted Plaintiff's application to proceed *in forma pauperis* (IFP), ECF No. 14, and referred the case that same day to Magistrate Judge Morris, ECF No. 15. By that point, Plaintiff had already filed six Motions that are still currently pending. These Motions include: (1) Plaintiff's *ex parte* Motion for Leave of court for Service by the U.S. Marshals, ECF No. 3, (2) Motion for Leave of Court and Notice to the Courts of Defendants Contact, ECF No. 6, (3) Plaintiff's *ex parte* Emergency Motion for Leave of Court to Amend Additional Defendants, ECF No. 7, (4) Plaintiff's *ex parte* motion for Leave of Court to Appoint a Special Master, ECF No. 8, (5) Plaintiff's *ex parte* Motion for Leave of Court, Notice to the Court of Continued Harassment by Defendant, ECF No. 9, and (6) a second Motion entitled Plaintiff's *ex parte*

---

[3] There is no first name for Attorney Walsh in the Complaint. *See generally* ECF No. 1.

Emergency Motion for Leave of Court, Notice to the Court of Continued Harassment by Defendant, ECF No. 10.

Magistrate Judge Morris screened Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2)(B)'s IFP procedures. *See* ECF No. 16 at PageID.151. And on November 11, 2025, Judge Morris issued an R&R recommending that this Court *sua sponte* dismiss Plaintiff's Complaint for failure to state a claim because the Plaintiff "[had] not sufficiently pled any claims against any Defendant." ECF No. 16 at PageID.165. Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, Judge Morris provided Plaintiff with fourteen days to object, *id.* at PageID.166, which he did not do. But Plaintiff did file (1) an *ex parte* Motion for Leave to Amend Jurisdiction Plaintiff Accepts Magistrate, ECF No. 17, and (2) an *ex parte* Leave of Court for a Motion for Reconsideration, ECF No. 18, both of which were filed within the fourteen-day objection window, and the Court will construe as Objections.

## II.

A party may object to and seek review of an R&R. *See* FED. R. CIV. P. 72(b)(2). If a party properly objects, then "[t]he district judge must determine de novo" the part of the R&R to which the objection pertains. FED. R. CIV. P. 72(b)(3). A party must object timely and with specificity— failure to do so waives any right of appeal. *Thomas v. Arn*, 474 U.S. 140, 151, 155 (1985) (citation omitted); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Likewise, parties may not "raise at the district court stage new arguments or issues that were not presented" before the magistrate judge issues the R&R. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

When reviewing an R&R *de novo*, this Court must review at least the evidence the parties presented to the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the court can accept, reject, or modify the R&R. FED. R. CIV. P. 72(b)(3).

**III.**

When a party objects to a magistrate judge's report, the court must review *de novo* those portions of the report to which the party has properly objected. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). To that end, the court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the court may accept, reject, or modify the magistrate judge's findings or recommendations. Fed. R. Civ. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, 585 F.Supp.3d 1014, 1017–18 (E.D. Mich. 2021). If the court adopts the R&R, then it may simply "state that it engaged in a de novo review of the record and adopts the report and recommendation" without "stat[ing] with specificity what it reviewed." *United States v. Robinson*, 366 F. Supp. 2d 498, 505 (E.D. Mich. 2005) (*Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002); 12 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3070.2 (2d ed. 1997)), aff'd, 290 F. App'x 769 (6th Cir. 2008); *Fharmacy Recs. v. Nassar*, 465 F. App'x 448, 456 (6th Cir. 2012) ("[T]he district court's statement that it conducted de novo review is deemed sufficient").

This Court has reviewed Plaintiff's Complaint, ECF No. 1; Plaintiff's Motion for Leave of court to Amend Jurisdiction Plaintiff Accepts Magistrate, ECF No. 17; Plaintiff's Motion for Leave of Court for Reconsideration, ECF No. 18; and all other applicable filings on the docket. Having conducted this de novo review, this Court concludes that Judge Morris's factual conclusions and legal reasoning are correct. Thus, the R&R, ECF No. 16, will be adopted,

- 10 -

Plaintiff's Motion for Leave of Court to Amend Jurisdiction Plaintiff Accepts Magistrate and Plaintiff's Motion for Leave of Court for Reconsideration, which the Court has construed as Objections, ECF Nos. 17, 18, will be overruled, and Plaintiff's Complaint, ECF No. 1, will be dismissed without prejudice. Furthermore, all remaining Motions, ECF Nos. 3, 6, 7, 8, 9, 10, 19, 21, 22, will be denied as moot. And all Defendants will be dismissed.

**IV.**

Accordingly, it is **ORDERED** that Judge Morris's Report and Recommendation, ECF No. 16, is **ADOPTED**.

Further, it is **ORDERED** that Plaintiff's Motion for Leave of Court to Amend Jurisdiction Plaintiff Accepts Magistrate and Plaintiff's Motion for Leave of Court for Reconsideration, which the Court has construed as Objections to Judge Morris' Report and Recommendation, ECF Nos. 17, 18, are **OVVERULED**.

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that all remaining Motions, ECF Nos. 3, 6, 7, 8, 9, 10, 19, 21, 22, are **DENIED** as moot.

**This is a final order and closes the case.**

Dated: February 20, 2026          s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge